UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
IKEEM FOWLER-WASHINGTON,

                *Plaintiff*,

      v.

CITY OF NEW YORK, et al.,

                *Defendants*.
--------------------------------X

**MEMORANDUM AND ORDER**

19-CV-6590(KAM)(RER)

**KIYO A. MATSUMOTO, United States District Judge:**

        This case involves civil rights claims brought pursuant to 42 U.S.C. §§ 1983 and 1988.  The plaintiff, Ikeem Fowler-Washington ("Plaintiff"), alleges that police officers from the New York City Police Department ("NYPD") used excessive force while arresting him at his home in 2017.[1]  On October 5, 2020, this court vacated discovery orders issued by now-retired Magistrate Judge James Orenstein, and then subsequently, on October 8, 2020, "so-ordered" Defendants' proposed stipulation of confidentiality and protective order (which Magistrate Judge Orenstein had ordered to be filed on the docket) to govern discovery.

        Plaintiff has filed a motion for reconsideration (ECF Nos. 61-63, 65), which Defendants oppose (ECF No. 64).  For the reasons that follow, Plaintiff's motion is DENIED.

---

[1] The named defendants in this action are the City of New York and several NYPD officers and detectives (collectively, "Defendants").

## Background

The court assumes the parties' familiarity with the
underlying factual allegations and procedural history of this
case, which were set forth in greater detail in the court's
October 5, 2020 Memorandum and Order vacating Magistrate Judge
Orenstein's two discovery orders.  (ECF No. 51, Memorandum and
Order ("October 5 Order").)  The court's October 5 Order
required Defendants to produce to Plaintiff all personnel
records of the NYPD officers involved in the alleged underlying
incident.  (*Id.* at 7-8.)  However, the court allowed Defendants
to redacted certain of the officers' personal identifying
information before the records were produced.  (*See id.* at 8-
12.)  The court permitted Defendants to redact the following
categories of NYPD officer personal information from the
records: social security numbers, dates of birth, home
addresses, and the names of their family members.  (*Id.* at 11-
12.)  The court further ordered that "[p]ersonal telephone
numbers, email addresses, medical information, and other
personal identifying information" in the records should be
restricted to "attorney's eyes only," though it did need not
need to be redacted.  (*Id.* at 12 n.4.)

Three days later, Defendants filed a letter asking the
court to clarify "whether the documents to be produced [would]
also [be] subject to the proposed stipulation of confidentiality

and protective order filed [by Defendants] on August 19, 2020."
(ECF No. 52, Letter Seeking Clarification, at 1.)  The
Defendants' proposed stipulation of confidentiality and
protective order (hereinafter, the "protective order") had been
filed on August 19, 2020 in response to an order the previous
day by Magistrate Judge Orenstein, though Plaintiff had not
agreed or filed objections to it.  The protective order required
"Plaintiff's counsel [to] keep confidential for 'attorney's eyes
only' names, addresses, telephone numbers, social security
numbers, dates of birth, and other identifying personal
information of witnesses, to the extent that such information is
provided to Plaintiff's attorney."  (ECF No. 40, Proposed
Protective Order, ¶ 5.)  The protective order further designated
certain documents as "Confidential Materials," such as personnel
records of NYPD officers, contact information of non-parties,
and NYPD training materials.  (*Id.* ¶ 2.)  These "Confidential
Materials" could be used by Plaintiff's counsel only in
preparation of Plaintiff's case, though they would no longer be
deemed "Confidential Materials" if they were found to be
"publicly available." (*Id.* ¶¶ 3, 11.)  The court found the
limitations in the protective order to be consistent with its
October 5 Order, because the protective order likewise required
that unredacted sensitive information be restricted to

"attorney's eyes only," and thus the court "so-ordered" the protective order. (*See* ECF No. 53, Protective Order.)

Plaintiff has not moved for reconsideration of the court's October 5 Order, but has moved for reconsideration of the court's subsequent "so-ordering" of Defendants' protective order. (ECF No. 61, Motion for Reconsideration; *see* ECF No. 63, Plaintiff's Memorandum in Support ("Mem."); ECF No. 65, Plaintiff's Reply.) Defendants oppose the motion for reconsideration. (*See* ECF No. 64, Defendants' Response in Opposition ("Opp.").)

## Legal Standard

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.*

## Discussion

### I.   Defendants' Entitlement to a Protective Order

Plaintiff first argues, in essence, that the court should not have granted a protective order because Magistrate

Judge Orenstein denied Defendants' request for a protective order, and Defendants "did not appeal from that part of" Magistrate Judge Orenstein's original orders. (Mem. at 10; *see also id.* at 11-14.) As set forth below, Plaintiff's account is incomplete.

The parties in this case were involved in ongoing discovery disputes before Magistrate Judge Orenstein. Plaintiff sought unrestricted discovery of "all of the documents and materials in [Defendants'] possession concerning the personnel records of the defendants including but not limited to CCRB records, IAB records, performance evaluations, records of disciplinary proceedings, [and] Chief of Department records . . . ." (ECF No. 35, Motion for Discovery, at 1.) At a status conference on August 12, 2020, Magistrate Judge Orenstein ordered that Defendants produce the records by August 19, "subject to the parties' agreement that social security numbers and birth dates will be kept confidential and available for review only by counsel." (ECF No. 37, Minute Entry.) Defendants sought a stay of that discovery order until Defendants filed objections to it pursuant to Federal Rule of Civil Procedure 72. (ECF No. 38, Motion to Stay.) Magistrate Judge Orenstein granted in part and denied in part the motion to stay, ordering that the records still had to be produced by August 19, but that production of the records would be subject

to Defendants' protective order (to which Plaintiff had not yet
agreed) until a ruling was issued on Defendants' objections.
(ECF Dkt. Order Aug. 18, 2020.)  Defendants then filed the
protective order.  (ECF No. 40, Proposed Protective Order.)

Thus, pursuant to Magistrate Judge Orenstein's orders,
the protective order governed all discovery in this case, until
the undersigned resolved Defendants' objections to his discovery
orders.  In their objections to Magistrate Judge Orenstein's
orders, Defendants asked that this court "endorse the protective
order previously filed on the docket[.]"  (ECF No. 48,
Defendants' Memorandum in Support of Objections, at 16.)

Defendants therefore raised the issue of the
protective order in their objections, and the protective order
was properly before the court at that time.  While the court did
not specifically "so-order" the protective order in its October
5 Order, it did describe a similar scope of confidentiality:
that confidential identifying information should be restricted
to "attorney's eyes only" by Plaintiff, even if it did not fall
into a category that required it to be redacted.  (*See* October 5
Order at 12 n.4.)  Subsequently, because the court found that
the terms of the protective order were consistent with that
directive, the court ordered the parties to comply with it.

Plaintiff also argues that, in any event, Defendants
are not entitled to a protective order.  (*See* Mem. at 14-16.)

Plaintiff relies primarily on New York's recent repeal of New York Civil Rights Law § 50-a ("Section 50-a") to argue that a protective order is improper, given that police officers' records are now "readily available to the public at large" in New York.  (*Id.* at 15.)  But as explained in the court's October 5 Order, while New York's repeal of Section 50-a allows the public to access certain NYPD records in the context of a Freedom of Information Law request, sensitive portions of those records are still not subject to public disclosure.  (*See* October 5 Order at 11.)  And as Defendants explain (*see* Opp. at 8), the scope of discovery under Federal Rule of Civil Procedure 26 is likely much broader than New York's Freedom of Information Law, and so Plaintiff here will have access to more documents than he would as a member of the public, even after the repeal of Section 50-a.  Thus, the repeal of Section 50-a does not allow Plaintiff to publicly share any and all material produced in discovery.  Notwithstanding the repeal of Section 50-a, at least one court in this District has likewise held that, when police personnel records are produced in civil litigation, they should be produced pursuant to a protective order.  *See Benjamin v. City of New York*, Case No. 20-cv-2069, ECF No. 21, Transcript of September 22, 2020 Hearing (Magistrate Judge Kuo ruling that "given that the documents . . . here [are] broader than what is

publicly available, . . . I think that it is appropriate to have it protected at this point in time.").

As Plaintiff points out, the court's October 5 Order held that "[i]f police personnel records are available to the public, they are certainly available to civil rights plaintiffs if relevant to the litigation under Rule 26." (October 5 Order at 8.) But finding that the records are obtainable is a different inquiry than determining whether they ought to be subject to a protective order. As the court also held, courts have long recognized a need to keep police records confidential, even if the records are discoverable. (*Id.* at 9-11.) Moreover, although the public no doubt has an interest in gaining access to certain police records (indeed, that was impetus behind New York's repeal of Section 50-a), the public's right to access documents applies differently to discovery, which can be very broad, than it does to "judicial documents" that are filed with the court for judicial consideration and decision-making. *See Dorsett v. Cty. of Nassau*, 289 F.R.D. 54, 67 (E.D.N.Y. 2012) (holding that "no First Amendment right of access attache[d]" to an internal affairs report produced in discovery because it "was not filed with the Court and did not play any role in the performance of Article III functions").

In short, because the documents produced in discovery here will likely contain personal identifying information of

NYPD officers and third parties that will not be redacted, a protective order is appropriate.  Plaintiff points to no controlling law or data overlooked by the court when it entered the protective order.

Thus, the court turns to the issue of whether the protective order entered here was overly restrictive.

**II.  Scope of Protective Order**

Plaintiff also argues that the protective order entered by the court contains stricter limitations than those described in the court's October 5 Order.  (*See* Mem. at 16-20.) The court does not agree.  The terms of the protective order are consistent with the court's October 5 Order, and, contrary to Plaintiff's contentions, the protective order does not restrict the sharing of information that would be publicly available following the repeal of Section 50-a.  Each of Plaintiff's specific objections to the protective order are without merit.

First, Plaintiff argues that the protective order's designation of "all NYPD employment/personnel related records for the individual, and any other disciplinary histories or other records from The Civilian Complaint Review Board, Internal Affairs Bureau, other New York City Police Department divisions or any other agencies" as confidential "makes little sense," in light of "New York's policy shift in favor of disclosure to the general public (which obviously includes [P]laintiff and his

counsel)." (*Id.* at 18; *see* Protective Order ¶ 2(A)-(B).)  But
as discussed, the repeal of Section 50-a governs what the public
can access, not litigants' obligations under the Federal Rules
of Civil Procedure.  Here, Plaintiff is likely entitled to
discovery of more records than the public might be able to
access through a Freedom of Information Law request.  Portions
of those records may contain sensitive or confidential
information that would not be available to the public.
Plaintiff has been granted access to relevant information
necessary to litigate his case, but he does not have an
unfettered right to disclose that information.

Furthermore, the protective order specifically allows
that any record produced to Plaintiff need not be kept
confidential if it was "obtained by Plaintiff from sources other
than the Defendants," or was "otherwise publicly available."
(Protective Order ¶ 3.)  Thus, if Plaintiff is correct that all
of the relevant records should now be public following the
repeal of Section 50-a, he may obtain them through New York's
process for obtaining such records, and they will no longer be
considered confidential under the protective order.

Second, Plaintiff argues that the protective order's
requirement that the "names and contact information of non-party
individuals and/or witnesses" be kept confidential likewise
"makes no sense," because requiring "every reference to any

witness, whether they are civilians, other police officers who
may have knowledge or information, anyone from the prosecutor's
office, anyone who has treated [P]lantiff for his injuries, or
anyone else identified by an of the parties, [to] be designated
as confidential" is "untenable and without precedent." (Mem. at
19; *see* Protective Order ¶ 2(C).) Respectfully, this
restriction is both tenable and supported by precedent. Under
the terms of the protective order, merely because the names and
contact information of third parties must be kept confidential
does not mean that Plaintiff cannot prepare his case. Indeed,
beyond a conclusory assertion that this restriction is
"untenable," Plaintiff never explains how he will be prejudiced
by the restriction. The protective order allows Plaintiff to
use any confidential information "for the preparation or
presentation of Plaintiff's case," and counsel can share the
information with Plaintiff himself, with expert witnesses, and
with witnesses at depositions. (Protective Order ¶ 11.) Should
Plaintiff need to make disclosures of any confidential
information beyond that, he may request the ability to do so by
following the steps set forth in the protective order, and, if
unsuccessful, he may ultimately seek the intervention of the
assigned magistrate judge.

        The court also notes that, contrary to Plaintiff's
unsupported assertion that such a restriction is "without

precedent," courts routinely balance privacy interests against the public's right to access information, and in the case of "innocent third parties," their privacy interests "should weigh heavily in a court's balancing equation." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (quotation omitted). Plaintiff has proffered no reason why he would need to disclose the names or contact information of non-parties to anyone other than those involved in the preparation of his case. Should that need arise, he may seek permission to do so. And, as discussed, if any of the information can be obtained through other means, then it need not be subject to the confidentiality restriction.

Lastly, Plaintiff avers that the protective order "expressly designated" the "NYPD Patrol Guide" as confidential, even though the "NYPD makes the guide available for download on its website to anyone with an internet connection." (Mem. at 19; *see* Protective Order ¶ 2(D).) As already discussed, however, the very next paragraph of the protective order notes that if any of the documents deemed confidential are "publicly available," the confidential designation is overridden. Thus, the NYPD Patrol Guide, even though it is listed in the protective order as one of the "Confidential Materials," need not be kept confidential if it is available on the internet.

To summarize, the court finds that the protective order entered here was appropriately limited. Because the

protective order provides that materials available to the public are not confidential, Plaintiff is required to keep confidential the documents and records that are not otherwise available to the public under New York law, and personal information of third parties (though both categories of information can be shared with those who are preparing Plaintiff's case, or witnesses at depositions).  Both of these confidentiality restrictions are reasonable.

The court also notes that Defendants represent that they tried on "numerous occasions" to negotiate the terms of a protective order with Plaintiff's counsel, but Plaintiff's counsel apparently "steadfastly refused . . . even to negotiate the terms thereof."  (Opp. at 10.)  The court appreciates that Plaintiff's position was that Defendants were not entitled to a protective order, but given that Magistrate Judge Orenstein expected the parties to negotiate in good faith (*see* ECF No. 33, Minute Entry), and given that these records contain social security numbers and other sensitive information, Plaintiff should have been willing to at least negotiate some confidentiality restrictions over that sensitive information. It is difficult to square Plaintiff's quibbles with certain provisions of the protective order, which he has not supported with any showing of how the provisions will affect his ability

to litigate his claims, with Plaintiff's apparent refusal to negotiate in good faith earlier in the litigation.

## Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED.  Plaintiff has not pointed to any controlling law or data that the court overlooked in entering the protective order.  It will thus remain in effect, and discovery shall continue to be supervised by Magistrate Judge Ramon Reyes.

**SO ORDERED.**

Dated:     Brooklyn, New York
           December 9, 2020


                                    _____/s/_____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge

14