UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------

IKEEM FOWLER-WASHINGTON,

                    PLAINTIFF,          **MEMORANDUM & ORDER**

    -against-                           19-CV-6590(KAM)(RER)

CITY OF NEW YORK, ET AL.,

                    DEFENDANTS.

----------------------------------

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Ikeem Fowler-Washington ("Mr. Fowler-
Washington") brought this action against New York City Police
Officers Lawrence Avvenire, Kai Babb, Derrick Coleman, Roderick
Dantini, Brian Donoghue, Thomas Gagliardi, James Geissler, Shawn
Hayes, Vincent Hoosack, Steven Humburg, Jason Mayo, Jaipaul
Ramdat, Derek Sambolin, James Sgaglione, Timothy Terrillion,
Michael Tierney (collectively, the "Officer Defendants"), and
the City of New York (with the Officer Defendants,
"Defendants"), pursuant to 42 U.S.C. §§ 1981 and 1983, alleging
violations of his Fourth, Fifth, Sixth,[1] and Fourteenth Amendment

---

[1] The Court notes that though Plaintiff alleges a denial of his constitutional
right to fair trial claim, he only references the right to a fair trial under
the Due Process Clause of the Fifth and Fourteenth Amendments of the United
States Constitution, however, the claim of a denial of the right to a fair
trial finds its roots in the Sixth Amendment, *as well* as the due process
clauses of the Fifth and Fourteenth Amendments. *See Holbrook v. Flynn*, 475
U.S. 560, 567 (1986) (recognizing that the Sixth and Fourteenth Amendments
secure the constitutional right to a fair trial); *United States v. Ruiz*, 536
U.S. 622, 628 (2002) (recognizing that the Fifth and Sixth Amendments form
"part of [the Constitution's] basic 'fair trial' guarantee").

rights, specifically, the denial of the right to a fair trial
and excessive force.   (ECF Nos. 1, Compl.; 14, First Amended
Compl.)   Plaintiff's denial of fair trial claim is predicated on
his contention that officers falsely stated that Plaintiff
resisted arrest.

Defendants move for partial summary judgment with
respect to the Plaintiff's denial of the right to a fair trial
claim, first as to Officer Defendants Sgaglione, Ramdat,
Sambolin, and then as to all Defendants.[2]   In his opposition
memorandum, Plaintiff agrees that the denial of the right to a
fair trial can be dismissed against Defendant Sambolin (ECF No.
109, Pl. Opp'n Mem. at p. 3) for lack of personal involvement.
The Court agrees and dismisses the fair trial claim against
Defendant Sambolin with prejudice.   For the reasons set forth
below, Defendants' motion for partial summary judgment is
**GRANTED IN PART AND DENIED IN PART.**

<u>BACKGROUND</u>

In the instant action, Mr. Fowler-Washington claims
that in the early morning of December 16, 2017, Defendants
executed a search warrant at his home in Queens, attacked him,
and fabricated evidence about his resisting arrest, which led to
criminal charges.   The Court has taken the relevant facts for

---

[2] *See* ECF Nos. 108, Defs. Mot.; 109, Pl. Opp'n Mem.; 111, Defs. Reply.

Defendants' partial motion for summary judgment from the parties' respective Rule 56.1 statements of undisputed material facts, declarations, depositions, and exhibits.[3]  Defendants' counsel Peter Brocker attaches to his declaration true and correct copies of exhibits and relevant portions of the deposition transcripts of Mr. Fowler-Washington and of the Officer Defendants.  (*See* ECF Nos. 95, Brocker Decl.; 103, Brocker Decl.)  The declaration of Plaintiff's counsel, Michael Lumer, attaches true and accurate copies of relevant portions of the deposition transcripts of Mr. Fowler-Washington.  (*See* ECF No. 98, Lumer Decl.)  Based on the parties' 56.1 statements, the Court recounts the undisputed facts in the light most favorable to the nonmoving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).  The Court also notes where facts are disputed by the parties.

---

[3] See ECF Nos. 94, Defs. 56.1 Statement; 95, Decl. of Peter Brocker; 95-1, Ex. A, Search Warrant No. Q1375-17; 95-2, Ex. B, New York City Laboratory Report No. 2017-109826; 95-3, Ex. C, Arrest Report No. Q17655530; 95-4, Ex. D, Criminal Complaint; 95-5, Ex. E, Criminal Court Docket Sheet; 95-6, Ex. F, Deposition of Ikeem Fowler-Washington ("Fowler-Washington Dep."); 95-7, Ex. G, Certificate of Disposition; 98, Decl. of Michael Lumer; 98-1, Ex. 1, Deposition of Ikeem Fowler-Washington ("Fowler-Washington Dep."); 93, Defs. Pre-Motion Conference Letter; 99, Pl. Response to Defs. Pre-Motion Conference Letter; 100, Pl. 56.1 Counter Statement; 102, Defs. 56.1 Reply; 103, Decl. of Peter Brocker; 103-1, Ex. A, Deposition of Jaipaul Ramdat ("Ramdat Dep."; 103-2, Ex. B, Deposition of Lawrence Avvenire ("Avvenire Dep."); 108, Defs. Mot.; 109, Pl. Opp'n Mem.; 110, Decl. of Andrew Spears in Supp. Partial Summ. J.; 110-1, Defs. Ex. A, Deposition of James Sgaglione ("Sgaglione Dep."); 111, Defs. Reply.

## I.    Factual Background

On December 16, 2017, Defendants executed a search warrant for illegal drugs at 14-30 Red Fern Avenue, Apt. 1E, Queens, NY, where Mr. Fowler-Washington resided.  (ECF No. 100, Pl. 56.1 Counter Statement ¶ 1.)  Defendant James Sgaglione had obtained a search warrant from Queens County Judge John Zoll on December 13, 2017.  (ECF No. 95-1, Brocker Decl., Ex. A, Search Warrant No. Q1375-17.)

On the morning of December 16, 2017, Mr. Fowler-Washington was awakened by a loud sound inside his apartment. (ECF No. 102, Defs. 56.1 Reply ¶ 12.)  Mr. Fowler-Washington opened his bedroom door to see what was causing the noise, and saw Defendants in his apartment, executing their search warrant. (*Id.* ¶ 13.)  From there, the parties' accounts of their encounter differ in significant ways.  Though the Defendants have moved for summary judgment only against Plaintiff's denial of fair trial claim, facts regarding Plaintiff's excessive force claim are included to complete the record.

Mr. Fowler-Washington asserts that the Defendants did not mention anything about a search warrant and immediately began to strike him in the head and face.  (ECF Nos. 100, Pl. 56.1 Counter Statement ¶¶ 14-15; 98-1, Lumer Decl., Ex. A, Fowler-Washington Dep. at pp. 33-34.)  In his deposition, Plaintiff stated that by the time he got up out of his bed, the

4

officers were in front of his bedroom door.  (ECF No. 98-1, Lumer Decl., Ex. A, Fowler-Washington Dep. at pp. 31-32.)  He then testified how they "just attacked" and "started hitting" him.  (*Id.* at p. 34.)  Mr. Fowler-Washington could not see which police officer hit him, he "just felt a lot of hits" on the left side of his face, top of his head, and his back.  (*Id.* at pp. 34-37.)  He described the police officers "all around" him and that, in response to the officers hitting him, he "just stood there and put [his] head down."  (*Id.* at p. 36.)

Mr. Fowler-Washington was unable to provide more details on exactly which Officer Defendants participated in allegedly attacking him, and how many, because he explained that once his face was struck, his vision became blurry, blood from the cuts on his face dripped into his eyes, and he was unable to "do anything."  (*Id.* at pp. 37-38.)  Mr. Fowler-Washington maintains under oath that he did not resist arrest or fight back in any way.  (ECF Nos. 100, Pl. 56.1 Statement ¶¶ 15, 17; 109, Pl. Opp'n Mem. at p. 7.)  It is undisputed between the parties that Mr. Fowler-Washington suffered cuts on his face that required nineteen sutures to close.  (ECF No. 102, Defs. 56.1 Reply ¶ 16.)

Although Defendants admit that Mr. Fowler-Washington suffered cuts requiring sutures, they deny that any Officer Defendants struck Mr. Fowler-Washington.  (ECF No. 102, Defs.

56.1 Statement ¶¶ 14-15.)  Defendants assert that Mr. Fowler-Washington physically resisted officers' attempts to place him in handcuffs.  (*Id.*)  Defendant Sgaglione testified in his deposition that Defendant Avvenire told him that Mr. Fowler-Washington had kicked his legs and flailed his arms while Defendant Avvenire attempted to arrest him.  (ECF 110-1, Andrew Spears Decl., Ex. A, Sgaglione Dep. at p. 89.)  Defendant Sgaglione, who swore out the criminal complaint, also said that he was told by Defendant Avvenire that Mr. Fowler-Washington resisted to such an extent that Defendant Avvenire suffered a laceration to his left middle finger.  (*Id.* ¶ 17.)  The parties do not provide evidence of whether Defendant Sgaglione witnessed any of the interaction between Mr. Fowler-Washington and Defendant Avvenire, but Defendant Sgaglione testified that he and Defendants Avvenire had a conversation regarding Plaintiff's arrest at the precinct, after the Plaintiff's arrest.  (*See generally* ECF No. 110-1, Spears Decl., Ex. A, Sgaglione Dep.)  Defendant Sgaglione did not remember whether or not Defendant Avvenire told him that Mr. Fowler-Washington kicked various Officer Defendants.  (*Id.* at 90.)

Defendant Ramdat testified to having to defend himself and the other police officers against Mr. Fowler-Washington.  (*Id.* at p. 171.)  Defendant Ramdat stated that though he saw Mr. Fowler-Washington "struggling with Detective Sambolin," he "did

not see" Mr. Fowler-Washington "kick and punch Detective Sambolin." (*Id.*)  Defendant Avvenire described Defendants Ramdat and Sambolin "trying to restrain [Plaintiff], trying to grab his arms to handcuff him, but he was kicking and punching." (ECF No. 103-2, Spears Decl., Ex. B, Avvenire Dep. at p. 58.)

As to the nature and source of Mr. Fowler-Washington's injuries, Defendant Ramdat stated in his deposition that he witnessed at least one laceration on Mr. Fowler-Washington's head and that it was bleeding.  (ECF No. 103-1, Spears Decl., Ex. A, Ramdat Dep. at p. 128.)  Defendant Ramdat described Mr. Fowler-Washington as "conscious and alert, but he did have visible injuries to his forehead." (*Id.*)  Defendant Ramdat stated Mr. Fowler-Washington caused his own head to strike the bedpost due to "his resistance and erratic movements" and that Defendant Ramdat had to "us[e] force by putting [his] hands on [Mr. Fowler-Washington] to prevent him from sustaining any more injuries." (*Id.* at p. 172.)

Mr. Fowler-Washington was arrested on December 16, 2017, while inside of his home.  (ECF No. 100, Pl. 56.1 Counter Statement ¶ 3.)  Plaintiff contends that the arrest report falsely stated, *inter alia*, that Mr. Fowler-Washington "did actively flail his arms and legs, and grabbed the handcuffs of officers in an attempt not to be placed under arrest." (ECF No. 95-3, Brocker Decl., Ex. C, Arrest Report No. Q17655530 at p. 1

(capitalization omitted).)  Defendant Sgaglione was listed as
the arresting officer and Defendant Ramdat was listed as the
officer who entered the arrest report.  (*Id.* at p. 3.)

Defendants assert that they recovered marijuana from
their search of Mr. Fowler-Washington's apartment on December
16, 2017.  (ECF Nos. 95, Defs. 56.1 Statement ¶ 2; ECF 95-2, New
York City Laboratory Report No. 2017-109826.)  The New York City
Laboratory Report analysis indicated that the collected
contraband from Mr. Fowler-Washington's apartment was identified
as four bags of marijuana – with a total weight of 466.8 grams.
(ECF No. 95-3, New York City Laboratory Report No. 2017-109826.)
Defendant Sgaglione invoiced the drugs that were sent for
analysis.  (*Id.*)

Defendant Sgaglione then swore in a criminal complaint
stating in relevant part, "on or about December 16, 2017 . . .
[Mr. Fowler-Washington] committed the offenses of: Criminal
Possession of Marijuana in the Fourth Degree; Criminal
Possession of a Controlled Substance in the Seventh Degree;
Criminally Using Drug Paraphernalia in the Second Degree; and
Resisting Arrest."  (ECF Nos. 100, Pl. 56.1 Counter Statement ¶
5; 95-4, Brocker Decl., Ex. D, Criminal Compl. (capitalization
omitted).)  With respect to the resisting arrest offense, the
criminal complaint states Defendant Sgaglione was "informed by
Detective Avvenire that when [Defendant Avvenire] was attempting

8

to place handcuffs on the defendant [Mr. Fowler-Washington], the defendant pulled his arms, pushed Detective Avvenire, and attempted to remove handcuffs from Detective Avvenire's hand, causing a laceration to Detective Avvenire's left middle finger, in attempt to avoid being handcuffed and placed under arrest." (*Id.* (capitalization omitted))

Mr. Fowler-Washington's criminal complaint, which was presented at his arraignment on December 16, 2017, charged him with two drug-related felonies and four misdemeanors, including resisting arrest. (ECF Nos. 100, Pl. 56.1 Counter Statement ¶¶ 4-5.) Mr. Fowler-Washington was released on his own recognizance at arraignment. (*Id.* ¶ 7.) He made multiple additional court appearances post-arraignment on January 29, March 21, April 4, May 16, July 18, and September 18, 2018. (*Id.* ¶ 8.)[4] On May 16, 2018, Mr. Fowler-Washington pled guilty to Criminal Possession of Marijuana, and the remaining charges, including the Resisting Arrest charge, were dismissed. (*Id.* ¶¶ 9-10; ECF No. 95-7, Brocker Decl., Ex. G, Certificate of Disposition.)

---

[4] Defendants state in their 56.1 Statement that Plaintiff made four additional court appearances post-arraignment, Plaintiff disputed the number of appearances with reference to Defendants' Exhibit E and without any other information. (ECF No. 100, Pl. 56.1 Counter Statement ¶ 8.) The Court counts at least four dates on the Plaintiff's Record of Court Action and has included others from the record when the Plaintiff may likely have attended a post-arraignment court appearance. (ECF No. 95-5, Brocker Decl., Ex. E, Record of Criminal Court.)

## II. Procedural Background

Mr. Fowler-Washington commenced this action on November 21, 2019, and filed a First Amended Complaint on May 4, 2020. (ECF Nos. 1, Compl; 14, First Amended Compl.) On February 11, 2022, pursuant to Federal Rule of Civil Procedure 56, Defendants filed a letter and Local Rule 56.1 Statement with the Court seeking a pre-motion conference to file an anticipated motion for partial summary judgment on the deprivation of fair trial claim. (ECF Nos. 93-95.) On February 11, 2022, the parties stipulated, and the Court ordered the (1) dismissals, with prejudice, of all claims against the City of New York, Kai Babb, Derrick Coleman, Roderick Dantini, Brian Donoghue, Thomas Gagliardi, James Geissler, Shawn Hayes, Vincent Hoosack, Stevem Humburg, Jason Mayo, Timothy Terrillion, and Michael Tierney; (2) withdrawal with prejudice of Plaintiff's first cause of action, entitled "§ 1983 Claim Against the Individual Defendants," in the First Amended Complaint against Officer Defendants Lawrence Avvenire, Derek Sambolin, Jaipaul Ramdat, and James Sgaglione; and (3) the withdrawal with prejudice of Plaintiff's claims for excessive force and failure to intervene against Defendant James Sgaglione. (ECF Nos. 92, 96.)

The remaining claims in Plaintiff's First Amended Complaint are the denial of right to fair trial regarding the resisting arrest charge, the use of excessive force in arresting

Plaintiff, and failure to intervene under § 1983.  (ECF No. 14, First Amended Compl. at pp. 9-11.)  The parties did not stipulate to dismiss Plaintiff's right to fair trial claim in the First Amended Complaint against Officer Defendants Lawrence Avvenire, Derek Sambolin, Jaipaul Ramdat, and James Sgaglione for which Defendants have moved for summary judgment.  (*Id.*)

On March 1, 2022, Plaintiff responded with his Rule 56.1 Counter Statement and opposition to Defendants' 56.1 Statement.  (ECF No. 99-100.)  On March 15, 2022, the Defendants responded with their Rule 56.1 Reply Statement and opposition to Plaintiff's Counter Statement.  (ECF No. 102-03.)  The parties held an unsuccessful settlement conference before Magistrate Judge Reyes on April 5, 2022.  (Minute Entry for April 5, 2022.) On June 3, 2022, the parties fully briefed Defendants' motion for partial summary judgment on the right to fair trial claim. (ECF No. 107-111.)

## **STANDARD OF REVIEW**

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law.  *Rojas*, 660 F.3d at 104.  In deciding a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Finally, the "mere

existence of a scintilla of evidence in support of the
[nonmoving party's] position will be insufficient; there must be
evidence on which the jury could reasonably find for the
[nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 252 (1986).  When considering a motion for summary
judgment, the Court must decide whether, drawing all inferences
in favor of the nonmoving party, the evidence would "permit a
reasonable juror to find for the party opposing the motion."
*Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016).

The Court notes that Defendants respond to a
significant number of Plaintiff's factual statements in his 56.1
Counter Statement, by "[admit[ting] that Plaintiff so testified
but deny[ing] that this is a material fact."  (*See, e.g.,* ECF
No. 103, at ¶¶ 14-15, 18).  *See also Major League Baseball
Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 312 (2d Cir.
2008) ("Under Rule 56, it is the court's responsibility to
determine whether the opposing party's response to the assertion
of a material fact presents a dispute that is genuine."); *see
also United States v. Gentges*, 531 F. Supp. 3d 731, 735 n.1
(S.D.N.Y. 2021) ("Any party's failure to provide record support
for its challenge to another party's factual statement could
allow the Court to deem the challenged facts undisputed.").
Plaintiff does not dispute certain facts put forth by

Defendants, but nonetheless speculates about the veracity of those facts.  (ECF No. 109, Pl. Opp'n Mem. at p. 3.)

Accordingly, unless the Court has identified evidence in the record supporting a dispute of fact, the Court will consider the statements as undisputed admissions of the stated fact.  *See* Fed. R. Civ. P 56(e)[5]; *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (collecting cases) (holding that "responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials and will be deemed admissions of the stated fact." (alteration, citation, and internal quotation marks omitted)).

## DISCUSSION

## I.  DENIAL OF RIGHT TO FAIR TRIAL (FABRICATION OF EVIDENCE) CLAIM

Plaintiff asserts a number of constitutional claims arising out of the December 16, 2017 search of his home. Defendants move for partial summary judgment only on Plaintiff's denial of a right to fair trial claim, leaving Plaintiff's excessive force and failure to intervene claims for trial. Plaintiff's denial of the right to a fair trial claim is

---

[5] Federal Rule of Civil Procedure 56(e)(2) and (3) specifically provide that: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . . (2) consider the fact undisputed for purposes of the motion [or] (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it[.]"

premised on his assertion of fabricated information or evidence regarding resisting arrest that led to a deprivation of his liberty. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016). To prevail, a plaintiff must demonstrate that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012); *Garnett* 838 F.3d at 279. A plaintiff need not have proceeded to trial to have an actionable § 1983 claim based on the denial of the right to a fair trial, but rather need only show that the allegedly false information is material, such that it would "likely influence a jury's decision[.]" *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

### A. Defendants Jaipaul Ramdat, Derek Sambolin, and James Sgaglione and the Right to a Fair Trial Claim

Defendants assert that because Mr. Fowler-Washington has not demonstrated the personal involvement of Officer Defendants Jaipaul Ramdat, Derek Sambolin, or James Sgaglione in his claim for denial of the right to a fair trial, summary judgment should be granted as to these Officer Defendants. Defendants argue that only Defendant Lawrence Avvenire stated that Plaintiff had resisted arrest, and thus only he could have

15

potentially fabricated any evidence, and that the other three
Officer Defendants were not personally involved in any allegedly
false statement. (ECF Nos. 108, Defs. Mot. at p. 3-4; 95-4,
Criminal Complaint.) Plaintiff's opposition asserts that only
Defendant Sambolin is entitled to dismissal of the "denial of
the right to a fair trial" claim because there is no evidence of
his involvement in either the arrest report or the criminal
complaint at all. (ECF No. 109, Pl. Opp'n Mem. at p. 3.)
Plaintiff, however, argues that there is evidence Defendants
Ramdat and Sgaglione were directly involved in providing false
information to the prosecutor. (*Id.*)

Because the parties agree that the right to fair trial
claim against Defendant Sambolin should be dismissed, this Court
dismisses the fair trial claim again Officer Defendant Sambolin.
The Court agrees with Plaintiff, however, there is at least a
genuine dispute of material fact as to how involved Defendant
Ramdat was in providing the alleged fabricated evidence, but
finds that Defendant Sgaglione relied on a fellow officer
regarding information to support the resisting arrest charge and
grants summary judgment in favor of Defendant Sgaglione.

"It is well settled in this Circuit that personal
involvement of defendants in alleged constitutional deprivations
is a prerequisite to an award of damages under § 1983." *Brandon
v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019) (quotations omitted).

The participation of each defendant is a requirement, because defendants in a § 1983 action cannot be "held liable for damages for constitutional violations merely because [they] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Brandon at* 36 ("Most cases addressing personal involvement do so in the context of supervisory defendants.")  The Court notes that here, there is no evidence in the record that the Officer Defendants Sgaglione and Ramdat are supervisors who were merely tangentially named in Plaintiff's claims as a result of their authoritative positions.

Since personal involvement is a question of fact we are governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (citing *Hayden Pub. Co., Inc. v. Cox Broadcasting Corp.*, 730 F.2d 64, 67 (2d Cir. 1984).)  The party seeking summary judgment bears the burden of establishing that no such dispute exists.  *Gutwein v. Roche Laboratories*, 739 F.2d 93, 95 (2d Cir. 1984).  The Court addresses this standard as to Defendants Ramdat and Sgaglione.

In the record before the Court, Defendant Ramdat was the investigating official who entered the arrest report into the NYPD's computer system.  In his narrative statement,

17

Defendant Ramdat wrote, in part, that Mr. Fowler-Washington "did actively flail his arms and legs, and grabbed the handcuffs of officers in an attempt not to be placed under arrest" and answered "No" as to the question of whether force was used by the officers. (ECF No. 95-3, Brocker Decl., Ex. C, Arrest Report No. Q17655530 at 1 (capitalization omitted).) Yet, as discussed above, Mr. Fowler-Washington attests that he did not resist arrest. (ECF No. 100, Pl. 56.1 Counter Statement ¶¶ 15, 17.) And Defendant Ramdat further testified to using at least some force while attempting to arrest Plaintiff "by putting [his] hands on [Mr. Fowler-Washington] to prevent him from sustaining any more injuries." (ECF No. 103-1, Spears Decl., Ex. A, Ramdat Dep. at p. 172.) Given that a reasonable jury could find that Defendant Ramdat's testimony is at odds with Mr. Fowler-Washington's testimony and that Defendant Ramdat fabricated a differing narrative in his arrest report, the Court finds it premature to grant summary judgment to Defendant Ramdat based on his lack of personal involvement.

As to Defendant Sgaglione, Defendants argue that the "fellow officer" rule applies to Defendant Sgaglione, because although he personally swore under oath in support of the criminal complaint that Plaintiff had resisted arrest, the sole basis of Defendant Sgaglione's statement was information that had been provided to him by Defendant Avvenire, rather than on

18

the basis of his actual personal knowledge. (*Id.*)  Crucially,
Plaintiff does not dispute that Defendant Sgaglione relied on
Defendant Avveniere's statements that Plaintiff resisted arrest,
but instead claims, that either or both officers fabricated the
resistance.

The "fellow officer" rule provides that "an arresting
officer might not be aware of all the underlying facts that
provided probable cause or reasonable suspicion, but may
nonetheless act reasonably in relying on information received by
other law enforcement officials."  *United States v. Colon*, 250
F.3d 130, 135 (2d Cir. 2011); *see also, Charles v. City of New
York*, 2014 U.S. Dist. LEXIS 46741, at *17 (S.D.N.Y. Mar. 31,
2014).

As an initial matter, the Court notes that the Second
Circuit has rejected the argument in right to fair trial cases
that the existence of probable cause excuses an officer's
deliberate manufacturing of false evidence to support an arrest.
*See Garnett*, 838 F.3d at 277-78; *Ricciuti,* 124 F.3d at 130 (2d
Cir. 1997) ("No arrest, no matter how lawful or objectively
reasonable, gives an arresting officer or his fellow officers
license to deliberately manufacture false evidence against an
arrestee."); *see also Biswas v. City of N.Y.*, 973 F. Supp. 2d
504, 521 (S.D.N.Y. 2013) (denying New York qualified immunity to
defendants on summary judgment where they allegedly deliberately

19

fabricated evidence against plaintiff to have probable cause to arrest).  Defendants do not argue to the contrary.  Rather, the Defendants contend that Defendant Sgaglione reasonably relied on statements by his fellow officer, Defendant Avvenire, regarding Plaintiff's purported resistance to arrest.  (ECF No. 108, Defs. Mot. at p. 4.)  Moreover, Plaintiff presented no evidence that Defendant Sgaglione knew that Defendant Avvenire's statements regarding Plaintiff's resisting arrest were allegedly false.

This Court applies the fellow officer rule and finds based on the undisputed record that Defendant Sgaglione is entitled summary judgment.  Defendant Sgaglione was the officer who swore out the criminal complaint, after he spoke with Defendant Avvenire about the arrest, and was the investigating official who directly communicated to the District Attorney. (ECF Nos. 100, Pl. 56.1 Counter Statement ¶¶ 5, 15, 17; 95-4, Brocker Decl., Ex. D, Criminal Compl.)  In the criminal complaint, Defendant Sgaglione describes the recovery of drugs during the search, which support the drug charges, and he also stated that he "[was] informed by Detective Avvenire that when he was attempting to place handcuffs on the defendant, the defendant flailed his arms, pushed [Defendant] Avvenire, and attempted to remove handcuffs from [Defendant] Avvenire's hand," and caused injury to Defendant Avvenire (which Mr. Fowler-Washington denies happened).  (*Id*.)

Here, the undisputed record establishes that
Defendants Sgaglione does not state that he was present at the
interaction between Defendant Avvenire and Plaintiff during the
arrest, but he instead relied on Defendant Avvenire's account as
discussed at the precinct.  In the criminal complaint that
Defendant Sgaglione swore out, he detailed recovering drug
paraphernalia from the first bedroom, and then "further states
he is informed by [Defendant Avvenire . . .  that he observed
[Plaintiff] inside of a second bedroom . . . ."  (ECF No. 95-4,
Brocker Decl., Ex. D, Criminal Compl. at p. 2 (capitalization
omitted).)  Defendant Sgaglione's criminal complaint also
details that he "observed [and] apprehended other Charlene
Fowler . . . and apprehended other Dominque Fowler . . . inside
of a third bedroom[.]"  (*Id.* at 3 (capitalization omitted).)
Defendant Sgaglione's careful account of his own observations
and actions in the criminal complaint, contrasted with the
account of facts that Defendant Avvenire specifically conveyed
to him, demonstrates that Defendant Sgaglione was occupied with
other conduct during the execution of the search warrant and
relied on his fellow officer's account of the interaction
between Defendant Avvenire and Plaintiff.  Defendant Sgaglione
reasonably relied on Defendant Avvenire's statements regarding
Plaintiff's resistance to arrest, and swore to these facts in
the criminal complaint. *See, e.g., Martinez v. Simonetti*, 202

F.3d 625, 635 (2d Cir.2000) (concluding that officers were entitled to rely on accounts narrated by other officers at the scene of an arrest).

Moreover, Plaintiff offers no evidence that Defendant Sgaglione had knowledge of the alleged fabrication of Defendant Avvenire's statements.  That is, Plaintiff provides no contrary evidence from which a jury could find that Defendant Sgaglione knowingly fabricated information regarding the charge that Plaintiff resisted arrest.  Rather the record before the Court shows Defendant Sgaglione was reasonable in "relying on information received by other law enforcement officials," when he prepared and forwarded the criminal complaint. *Colon* at 135. Though Defendant Sgaglione is the officer who signed the criminal complaint, there is no evidence he was aware of the alleged constitutional violation regarding the fabrication of evidence, and consequently the Court grants summary judgment to Defendant Sgaglione on the right to fair trial claim.

In short, only Defendant Ramdat has not shown that he was not personally involved in the denial of Mr. Fowler-Washington's right to fair trial claim.  Defendant Sgaglione has shown that he did not witness the interaction between Defendant Avvenire and Mr. Fowler-Washington and reasonably relied on his fellow officer's account, without any evidence that he knew the account was false.  With regards to Defendant Ramdat, "[i]t is

22

for a jury to decide if these facts give rise to personal involvement sufficient for liability to attach under § 1983." *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 411 (S.D.N.Y. 2018); *see also Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).

The parties agree there is no evidence of any involvement whatsoever by Defendant Sambolin in making allegedly false statements to the prosecution. Nor is there evidence that Defendant Sgaglione had knowledge that the information from Defendant Avvenire upon which he relied in drafting the criminal complaint was allegedly false. The Court therefore grants summary judgment and dismisses Mr. Fowler-Washington's right to fair trial claim against Defendants Sambolin and Sgaglione.

**B.  Causation of the Deprivation of Liberty**

Defendants also ask the Court to grant summary judgment on Plaintiff's claim for denial of the right to a fair trial, based on their primary contention that Mr. Fowler-Washington cannot prove the fifth factor of the claim— specifically, that Defendants alleged fabrication of evidence caused Mr. Fowler-Washington a deprivation of liberty. The Court disagrees.

The Court first addresses Defendants' brief assertion that Plaintiff was in fact resisting arrest and therefore, Defendants did not fabricate any evidence to prosecutors. (ECF

No. 108, Defs. Mot. at pp. 3-4.)  A plaintiff need only produce sufficient evidence to create an issue of fact from which a reasonable jury could find that the officer's statement or evidence is false.  *See Garnett*, 838 F.3d at 269–70, 279 (holding that the plaintiff's and the officer's conflicting accounts of the events underlying the charges created an issue of fact as to falsity); *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (holding that the plaintiff's testimony that the information was false was sufficient evidence to create an issue of fact as to falsity).

Plaintiff's deposition testimony creates an issue of fact whether the Defendant Officers fabricated evidence, that was likely to influence a jury's decision, and forwarded that information to prosecutors.  *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012).  It is undisputed that Plaintiff was charged with resisting arrest along with drug-related offenses.  (ECF No. 100, Pl. 56.1 Counter Statement ¶ 6.)  Though Mr. Fowler-Washington pleaded guilty to the charge of Criminal Possession of Marijuana, he denied the allegations of Officer Defendants, their resulting reports, and resulting criminal charge that he resisted arrest.  (ECF Nos. 100, Pl. 56.1 Statement ¶¶ 15, 17.)  Moreover, the resisting arrest charge was ultimately dismissed, albeit after Plaintiff pleaded guilty to marijuana possession.  (ECF Nos. 100, Pl. 56 Counter

Statement ¶¶ 9-10; 95-7, Brocker Decl., Ex. G, Certificate of Disposition.)   On this record, given the conflicting testimony regarding whether Mr. Fowler-Washington resisted arrest, a reasonable jury could find that the remaining Officer Defendants submitted false information about Plaintiff's resisting arrest.

As to the fifth factor concerning causation of the deprivation of Plaintiff's liberty, Defendants argue that Mr. Fowler-Washington has failed to show a causal connection between the fabrication discussed above and the deprivation of his liberty, and that he must demonstrate that he suffered an "independent"[6] liberty deprivation separate from the deprivation resulting from the drug-related charges.   (ECF No. 108, Defs.

---

[6] The Court notes that Defendants may have confused the standards under malicious prosecution and right to fair trial in their arguments about the relevance of "independent charges". (ECF No. 108, Def. Mot. at pp. 5-6.) Indeed, in malicious prosecution claims, the contested criminal charge allegedly causing the deprivation of liberty must be independent from other legally sufficient charges arising out of the same incident. *Coleman v. City of New York*, No. 16-915, 2017 WL 1422485, at *1, 3 (2d Cir. Apr. 21, 2017) ("Because a malicious prosecution claim brought under § 1983 is grounded in the Fourth Amendment . . . the plaintiff must also establish  . . . [an independent] deprivation of liberty that rises to the level of a constitutional 'seizure.'"); *see also Walker v. Sankhi*, 494 Fed. Appx. 140, 143 (2d Cir. 2012) (summary order) (dismissing claim of malicious prosecution because plaintiff could not show an independent deprivation of liberty where he was already in custody for a burglary charge for which he was later convicted); *Othman v. City of New York*, No. 13-CV-4771, 2015 WL 1915754, at *6 (E.D.N.Y. Apr. 27, 2015) (dismissing claim of malicious prosecution because plaintiff failed to allege a "deprivation of liberty that stems exclusively from those charges that may have terminated in his favor.")   A right to fair trial claim, however, is already grounded in the Fourteenth Amendment, requiring "a deprivation of life, liberty, or property", and has no separate requirement for plaintiffs to demonstrate deprivation for each independent charge, as Defendants attempt to assert.   *See Baron v. Lissade*, No. 19CV6256RPKSMG, 2021 WL 4407836, at *4 (E.D.N.Y. Sept. 27, 2021)("The Second Circuit has recognized a Fourteenth Amendment right to a fair criminal trial . . . because [it] involve[s] the deprivation of liberty. (citing *Zahrey*, 221 F.3d at 348, 355)).

Mot. at p. 5.)  To prove a cognizable claim for the denial of the right to a fair trial, Plaintiff must establish a causal connection between the fabricated evidence and his deprivation of liberty.  *See Zahrey v. Coffey*, 221 F.3d 342, 348, 355 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right," and the "deprivation of liberty of which [plaintiff] complains [must] be shown to be the result of [the defendant's] fabrication of evidence." (quotation omitted)).  Importantly, a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the plaintiff.  *Garnett* 838 F.3d at 277-79; *Kee v. City of New York*, 12 F.4th 150, 168-69 (2d Cir. 2021).

Courts have found that the causation of deprivation of a liberty in a right to fair trial claim is satisfied where a plaintiff has shown that the plaintiff would not have been charged with a particular crime absent the fabrication.  *See Ricciuti, 124 F.3d at 126-27* (plaintiffs alleged that fabrication caused them to be charged with a more serious crime, felony assault in the second degree, rather than misdemeanor assault, and caused the prosecutors to add another charge); *see also Torres v. City of New York*, 2017 WL 4325822, at *5

26

(E.D.N.Y. Sept. 27, 2017) (finding a lack of causation in part because "nothing in the criminal complaint" supported "even an inference that [the officer's fabrication] factored into the . . . decision to bring charges against plaintiffs").  If fabricated evidence is the basis of the charges brought against an individual, a jury could reasonably conclude that this evidence caused the prosecutor to pursue charges.  *Loftin v. City of New York*, No. 15-CV-5656 (MKB), 2017 WL 3614437, at *9 (E.D.N.Y. Aug. 21, 2017) ("[B]ecause the information provided by the officers was the basis for the charges against Plaintiff, the officers' statements influenced the decision of the District Attorney's Office to charge Plaintiff in the Criminal Complaint."); *Ashley v. City of New York*, No. 14-CV-5559 (NGG), 2017 WL 2972145, at *7-9 (E.D.N.Y. July 12, 2017) (even where sufficient probable cause for prosecution existed to deny a malicious prosecution claim, because a jury could conclude that a prosecutor might have dropped the charges after discovering that some of the statements relied on in the complaint were false, plaintiff's fair trial claim survived a motion for summary judgment); *Thompson v. Clark*, No. 14-CV-7349 (JBW), 2018 WL 3128975, at *14-15 (E.D.N.Y. June 26, 2018) (plaintiff's fair trial claim survived summary judgment because the allegedly false evidence was "forwarded to the prosecutor . . . , placed in the criminal court complaint, used as the basis for charging

27

him with resisting arrest, and served to deprive him of his liberty"). Moreover, the Second Circuit held that a further deprivation of liberty can result from the fabrication of evidence even if the initial arrest is lawful. *Garnett*, 838 F.3d 265 at 277.

Here, there is at least a material dispute as to whether Plaintiff would have been charged at all with resisting arrest, absent the purported fabrication of evidence. That is, a reasonable jury could at least find that Defendants would not have subjected Plaintiff to criminal prosecution, had Plaintiff's only offense been the plain possession of marijuana. *See Loftin*, 2017 WL 3614437, at *9; *Ashley*, 2017 WL 2972145, at *7-9; *Thompson*, 2018 WL 3128975, at *14-15. Indeed, Defendants have provided no evidence to this Court regarding how the prosecution might have proceeded absent a resisting arrest charge. The Court cannot find on the current record that Defendants satisfied their burden on summary judgment of demonstrating that the resisting arrest charge did not factor into the charging decisions, the prosecution of Mr. Fowler-Washington, or discussions regarding his guilty plea. A reasonable jury could find that statements about Mr. Fowler-Washington resisting arrest and causing injury to an officer were important to the prosecutor's charging decisions or likely to influence a jury in the plaintiff's criminal case.

Furthermore, Defendants more broadly claim that "plaintiff must show that the fabrication caused a deprivation above and beyond the fact of the prosecution itself." (ECF No. 108, Def. Mot. at p. 5.) The Court notes that the Defendants incorrectly interpret two Second Circuit opinions. In *Caravalho v. City of New York*, the Second Circuit focused on the fact that the plaintiffs had no evidence they were charged or detained for *any* crime related to the alleged fabrication—which is not the case here. 732 F. App'x 18, 24 (2d Cir. 2018). In *Ganek v. Leibowitz*, the Second Circuit held that there must be "separate harms" from the fabricated evidence, other than the harm of *arrest* itself. 874 F.3d 73, 91 (2d Cir. 2017). In *Ganek*, the Second Circuit expressly stated that if the "fabrication allegedly informed post-arrest charging and bail determinations," these circumstances would suffice as "separate harms." *Id.* at 91.

The Second Circuit has held that a plaintiff can establish a deprivation of liberty by demonstrating a number of post-arraignment court appearances, bail requirements, a period of incarceration, or travel restrictions. *See Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a . . . deprivation of liberty."

(quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997))); *see Jocks* at 136.  Plaintiff fits within these precedents.

Here, Mr. Fowler-Washington indeed was subjected to multiple post-arrest proceedings in which he was required appear and defend himself from criminal prosecution.  (ECF No. 95-5, Brocker Decl., Ex. E, Record of Criminal Court.)  This undisputed evidence is sufficient to demonstrate a deprivation of a liberty interest.  *See Rohman v. New York City Transit Authority*, 215 F.3d 208, 215–16 (2d Cir. 2000) (finding that the plaintiff sufficiently demonstrated a liberty deprivation where he was required to make five court appearances and because he was released on his own recognizance, he was required to "render himself at all times amenable to the orders and processes of the court"); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995); *Arbuckle v. City of New York*, No. 14-CV-10248, 2016 WL 5793741, at *10-11 (S.D.N.Y. Sept. 30, 2016) (collecting cases); *Ashley*, 2017 WL 2972145, at *7 (holding that appearing in court on seven occasions could constitute a deprivation of liberty); *see also Perez v. Duran*, 962 F. Supp. 2d 533, 540-43 (S.D.N.Y. 2013) (holding that requiring the plaintiff to make two court appearances and comply with travel restrictions could constitute a "post-arraignment liberty restraint").

Construing the evidence in the light most favorable to Mr. Fowler-Washington and drawing all reasonable inferences in

his favor, a jury could find that Mr. Fowler-Washington's criminal charge of resisting arrest, post-arrest detention, and his four post-arraignment court appearances resulted from the resistance of arrest charge brought against him.  Accordingly, Mr. Fowler-Washington's claim for denial of his right to fair trial against Defendants Ramdat and Avvenire survives summary judgment.

## II.  NOMINAL DAMAGES

Finally, Defendants argue in the alternative that if Plaintiff's claim for denial of the right to a fair trial is not dismissed on summary judgment, Plaintiff should be limited as a matter of law to recovering only nominal damages.  Defendants assert that Plaintiff cannot point to evidence that he suffered a deprivation of liberty as a result of the alleged fabrication of evidence in this matter (*i.e.*, that the officers alleged he resisted arrest), because he was also charged with, and pleaded guilty to narcotics offenses.  (ECF No. 108, Defs. Mot. at pp. 6-7.)  Defendants assert that Plaintiff cannot demonstrate that he was harmed in any way, even if the information regarding resisting arrest was false, and he cannot recover compensatory damages.

Because the Court finds that there are disputes of material fact whether Plaintiff suffered a deprivation of liberty as a result of the alleged fabrication of evidence, the

Court cannot conclude that Plaintiff suffered no harm that could be subject to compensatory damages.  Therefore, the Court reserves for trial the decision to limit Plaintiff to nominal damages on his right to fair trial claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part. The Court GRANTS the Defendants summary judgment on Mr. Fowler-Washington's denial of right to fair trial claim, as to Defendants Sambolin and Sgaglione.  The Court DENIES Defendants' motion for partial summary judgment on Mr. Fowler-Washington's denial of right to fair trial claim, as to Defendants Avvenire and Ramdat.  The parties are directed to schedule a settlement conference with Magistrate Judge Reyes and/or complete the remaining discovery in this case.

**SO ORDERED.**

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated: Brooklyn, New York
March 7, 2023